21 F.3d 423
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 James T. McGRATH, Plaintiff-Appellant,
v.
BALTIMORE COUNTY COMMUNITY COLLEGES; Nancy M. Hubers,
Chairman, Board of Trustees, Baltimore County Community
Colleges: Donald J. Slowinski, President, Essex Community
College; Andrew J. Snope, Dean of Instructions for Essex
Community College, Defendants-Appellees.
 No. 93-1860.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 7, 1994.
Decided April 8, 1994.
 
 Appeal from the United States District Court for the District of Maryland at Baltimore. Herbert F. Murray, Senior District Judge. (CA-92-3425-HM).
 Argued: Kim Lorraine Hargrove, Oxon Hill, MD, for appellant.
 John A. Austin, Asst. Co. Atty., Towson, MD, for appellees.
 On Brief: Susan Goering, American Civil Liberties Union Foundation of Maryland, Baltimore, MD, for appellant.
 Stanley J. Schapiro, Co. Atty., Towson, MD, for appellees.
 D.Md.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and HALL and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 James McGrath, a white man, was hired as an associate professor and Chairman of the Business and Management Division at Essex Community College (Essex) on September 1, 1986. On February 28, 1991, the dean of the college notified McGrath that his contract as Division Chair was not being renewed; on August 28, 1991, Essex's Board of Trustees formally removed McGrath as Division Chair, and ultimately replaced him with a black Chair. McGrath is still a professor at Essex.
 
 
 2
 After unsuccessfully filing a complaint with the Equal Employment Opportunity Commission, McGrath filed this action against Essex, alleging that Essex removed him as Division Chair because of his outspoken support for affirmative action and his specific plans to hire a black faculty member, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e et seq. Essex responded that it only demoted McGrath because of his unsatisfactory performance as Division Chair, and moved for summary judgment. Ruling on memoranda in support of and in response to Essex's motion, the district court found that, although McGrath had raised a prima facie case of retaliation, he failed to produce any evidence that could warrant a reasonable jury in finding that Essex's proffered reason for demoting McGrath--namely, his sub-par performance--was but a pretext for discrimination, and accordingly granted summary judgment in Essex's favor.
 
 
 3
 Having considered the arguments of the parties, we are persuaded by the opinion of the district court. Once Essex responded with a nondiscriminatory reason for not renewing McGrath's contract as Division Chair, McGrath had the burden of "prov[ing] by a preponderance of the evidence that the legitimate reasons offered by [Essex] were not its true reasons, but were a pretext for discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973)). McGrath argues primarily that the fact that he had received favorable reviews from Fred Capshaw, Essex's dean, raised a genuine question as to whether Essex's claim that it demoted McGrath because of his poor performance was actually a pretext for a discriminatory motive. McGrath's argument is, as the district court recognized, altogether unsupported by the evidence of record.
 
 
 4
 If anything, the "favorable reviews" cited by McGrath actually serve to corroborate Essex's claim that it was not satisfied with McGrath's performance. Although both reviews offered some favorable comments, they each specified numerous areas in which McGrath's performance was sub-par. Then-Dean Capshaw noted, for example, that "the division perceives that [McGrath] ha[s] not kept it sufficiently well informed of institution-wide development," J.A. at 49; that he hoped McGrath "would interact more forcefully with others on campus and be strongly assertive of the needs of [his] division .... [and] that [McGrath] would initiate more interaction between [him]self, the division, and me...." Id.; that McGrath's efforts to address staffing questions "need to be done in a more thorough and systematic way and with more follow through," id. at 50; that McGrath "need[ed] to be more directly involved in providing guidance to department heads," id.; and that McGrath's performance indicated "the need for more discerning comment on personnel matters as they are advanced to [the Dean's] office, the need for fuller divisional homework before advancing request [sic] to[the Dean's] office and the need for more continuity" in the division plan, id. at 51. Far from proving that Essex's claim of dissatisfaction with McGrath's performance was pretextual, these performance reviews in fact only serve to substantiate Essex's position.
 
 
 5
 In addition to the administrative shortcomings described above, McGrath was also the subject of numerous complaints by fellow faculty members. For example, in a May 3, 1990, letter rejecting McGrath's application for a promotion, Dean Capshaw wrote of "the high level of discontent expressed to me by faculty members in [McGrath's] division," specifying that "thirteen members of the division have advanced comment to my office in recent months that have not been positive."
 
 
 6
 Like the district court, we are fully persuaded that no reasonable jury could conclude that Essex's justification for demoting McGrath was a pretext for discrimination, and accordingly affirm the district court's order granting Essex's motion for summary judgment.
 
 
 7
 AFFIRMED.